**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| SHANA DOTY, individually and on behalf of all others similarly situated, | Case No.: 20-cv-60972-AHS |
| *Plaintiff,* | Judge Raag Singhal |
| *v.* | Magistrate Judge Alicia O. Valle |
| ADT LLC d/b/a ADT SECURITY SERVICES, a Delaware limited liability company, and TELESFORO AVILES, an individual, | |
| *Defendants.* | |

## PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE

Plaintiff Shana Doty filed this lawsuit after Defendant ADT LLC ("ADT") notified her that she'd been spied on through her ADT security system. An ADT technician had exploited a massive cybersecurity gap in ADT's internet-connected cameras, allowing him to peer into her home remotely—and the homes of hundreds of other families—because he was able to make himself an "authorized user" on her ADT account without her (or anyone else) knowing. Plaintiff filed the case on behalf of herself and the other customers similarly affected.

Rather than deal with the lawsuit, ADT has been scrambling to settle the claims of the putative class members individually by calling up the affected customers and offering settlements for pennies on the dollar—a plan that ADT was committed to before the lawsuit was filed and, evidently, still is. Critical to that plan is ADT's withholding material information so that an affected customer is willing to part with their claims for a fraction of the value. Before Plaintiff filed suit, for instance, ADT offered her a settlement of $2,500, without asking if she

was represented by counsel, without discussing the possible claims or their value, and offering a deliberately confusing release. (*See generally* Pl.'s Mot. for Protective Order, dkt. 8.) When Plaintiff refused, ADT increased that offer to $50,000, reflecting just how much—even in ADT's view—a less savvy customer was being bilked out of.

After Plaintiff filed suit, ADT refused to stop, and further refused to even tell individuals that a class action had been filed. Plaintiff moved for a protective order pursuant to Federal Rule of Civil Procedure 23, which was largely granted. (Dkt. 33.) The Court entered a protective order ("the Order") requiring ADT to provide a short but detailed notice to class members that a class action was on file, along with a basic description of the case and a plain-language warning that a class member was giving up all claims. (*Id.* at 5.) Critically, the Court ordered ADT to "**use that notice when conducting any settlement discussions with potential class members**." (*Id.* (emphasis added).)

Plaintiff's counsel has now learned that, immediately after the Order was entered, ADT resumed its campaign of securing settlements while, at the same time, circumventing the Court's Order. Specifically, ADT has rendered the Court's Order a nullity by calling putative class members and agreeing to the principal terms of a settlement—including the amounts—*orally*, and only when providing a copy of the written release to consummate the deal via e-mail did ADT provide the Court-ordered notice as a footnote. (*See* E-mail from ADT Representative to Latonya Richardson, *infra*.) When confronted, ADT's counsel disagreed that ADT had any obligation to provide the notice when communicating orally with class members. This contradicts the spirit of the Order, but it also contradicts the letter: there can be no question that ADT was "conducting any settlement discussions" on the phone without providing the

2

Court-ordered notice. (Dkt. 33 at 5.) ADT should be held in contempt for violation of the Order and any releases obtained in violation of the Court's Order invalidated.

## BACKGROUND

ADT is a leading provider of home security systems in the United States, and boasts that its home security packages—including, particularly, its "smart" home security components like cameras connected to the Internet—are safe and secure. (First Am. Compl., dkt. 47, ¶¶ 3–5.) In April 2020, ADT began calling some of its customers to tell them that a worst-case scenario had occurred: someone had been able to access the live camera feeds from inside their homes. (*Id.* ¶ 1.) Not only had Plaintiff and the putative class's homes been digitally invaded, but this had gone unnoticed by ADT for going on *seven years*. (*Id.* ¶ 2.) The vulnerability was discovered only by happenstance. (*Id.* ¶¶ 28-33.)

Plaintiff Shana Doty was one of the individuals that ADT called this April. An ADT representative told Ms. Doty that she had an unauthorized user on her ADT Pulse application, and eventually confirmed that it was an ADT technician who had access to the camera in her home. (Pl.'s Mot. for Protective Order at 3–4, dkt. 8.) After giving households this horrifying information and letting them sit for a few days, ADT's customer representatives began following up with a written release and settlement offer. (*Id.* at 4.) The Release was deeply confusing, in that it purported to release not only the customer's claims but also anyone with an "interest" in the account. (*Id.*) In exchange for the release, Ms. Doty was initially offered $2,500. (*Id.*) She refused. (*Id.*) ADT then upped the offer to $50,000. (*Id.*) At no time did the ADT representative ask if she was represented by counsel or discuss the possible claims or their value. (*Id.*)

3

Ms. Doty then filed this case. Plaintiff's counsel reached out to ADT's counsel to confirm they would, at a minimum, (1) confirm whether the class member is represented by counsel, (2) inform the individual about the currently-pending case, (3) share all material facts, and (4) communicate the information in a way that is clear to a layperson. (*Id.*) When ADT's counsel refused, she moved for a protective order. The motion was fully briefed, and ADT's counsel agreed not to seek settlements after the Court held a remote hearing on the motion. (*See* dkts. 12, 15.) At the hearing, ADT specifically noted that most of its settlement communications had been oral, and Magistrate Judge Patrick M. Hunt asked the Parties to agree on "essentially a script[.]" (Tr. of June 16, 2020 H'g at 17:12–18:5, attached hereto as Exhibit 1.) The Parties conferred but ultimately submitted competing proposed orders to the Court. (*See* Exhibits 2-A and 2-B to the Declaration of J. Eli Wade-Scott ("Wade-Scott Decl."), attached hereto as Exhibit 2.) The Court issued an Order requiring ADT to provide a notice and a link to the Complaint "when conducting any settlement discussions with potential class members." (Dkt. 33 at 5.) The Order went into effect on June 22, 2020.

The Court-ordered notice is brief but provides key information. It describes the basic facts of the case, notifies class members that a class action is on file seeking to enforce the class members' rights, provides a plain-English explanation that, by agreeing to a Settlement, the class member is giving up all of their claims against ADT, and tells people they should contact a lawyer if they have questions. In its entirety:

### NOTICE REGARDING SETTLEMENT OFFER

As you are aware, an ADT technician accessed the ADT Pulse application of your home security system, which allowed him potential remote access to any cameras in your home. You are being offered a settlement by ADT LLC for any lawsuit, injuries, or claims you may have against ADT.

4

ADT has been sued in a class action claiming that ADT violated several laws when its technician accessed your security cameras. The case is called *Doty v. ADT LLC*, 20-cv-60972-RKA (S.D. Fla.). You may or may not be eligible to join that proposed class action if you choose to do so. If the Court allows the case to proceed as a class action, it will appoint lawyers to represent the class.

Litigation is inherently unpredictable and can result in greater or less recovery than the settlement offer or no recovery at all. If you accept this settlement, you will give up all your rights against ADT and will not be able to recover through the class action or any other suit or proceeding related to the access of your Pulse system.

If you have any questions about the settlement offer or how much your case is worth, you should contact a lawyer.

(*See id.* at 4.)

Plaintiff's counsel has now learned that just days after the Order went into effect, ADT rushed to resume calling putative class members to push settlement agreements through, and all while effectively nullifying the Court-ordered notice. Indeed, as ADT's own summary e-mail sent to a class member describes, ADT's representatives were *fully securing oral agreements* in principle to settle putative class members' claims before providing the Court-ordered notice:



5

(Declaration of Latonya Richardson ("Richardson Decl."), attached hereto as Exhibit 3 ¶ 11.)

Nor was Ms. Richardson the only one. Another class member, Freya Wright, was similarly contacted by ADT and was offered $3,000 in exchange for a release of her claims. (Declaration of Freya Wright ("Wright Decl."), attached hereto as Exhibit 4 ¶ 3.) ADT described the payment as a "reimbursement[,]" but explained that Ms. Wright would need to sign something in exchange for the money. (*Id.*) Ms. Wright was not told that there were class actions on file, given any description of the claims, nor given access to Plaintiff's counsel's contact information. (*Id.* ¶¶ 5–7.) The representative did not provide the Court-ordered notice. (*See id.* ¶¶ 4-7.) The same thing happened to others—ADT called them offering a reimbursement for services but never provided the required information. (*See* Declaration of Christa Minor, attached hereto as Exhibit 5.)

Plaintiff's counsel does not know how many individuals ADT contacted in this way. Ms. Richardson's experience seems to have been unusual in that the ADT representative mentioned that there were class actions on file, but did not explain what the claims were or provide any other part of the Court-ordered notice. (Richardson Decl. ¶ 5.) This is all the more confounding in that, in her case, the ADT representative recognized some obligation to provide the material in the notice but nevertheless elected not to follow the Court's Order. (*See id.*) ADT did not give Ms. Wright and Ms. Minor any part of the Court-ordered notice.

Plaintiff's counsel contacted counsel for ADT to determine whether this was ADT's new *modus operandi* for trying to render the Court's Order irrelevant. (E-mail from J. Eli Wade-Scott to Charles Eblen et al., attached as Exhibit 2-C to the Wade-Scott Decl. ¶ 3.) ADT's counsel took the position that ADT was only obligated to provide the Court-ordered notice at some point

6

during the settlement process, and that ADT got to choose that point. Conveniently, ADT chose only to provide the Court-ordered notice when it came time to actually sign the agreement. (E-mail from Eblen to Wade-Scott ("Eblen E-Mail"), attached as Exhibit 2-D to the Wade-Scott Decl. ¶ 4.) Plaintiff's counsel also asked for the script that ADT representatives were using when contacting class members, which ADT's counsel refused to provide. (*See* E-mails between Eblen and Wade-Scott, attached as Exhibit 2-E to the Wade-Scott Decl. ¶ 5.)

## ARGUMENT

Courts have inherent power to enforce their own orders through civil contempt. *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991). "Disobedience of a court order unequivocally merits punishment save in instances in which compliance would necessarily result in 'an *irrevocable* and permanent surrender of a constitutional right.'" *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1208 (11th Cir. 1985) (quoting *In re Grand Jury Proceedings*, 601 F.2d 162, 169 (5th Cir. 1979)).

The process for finding a party in civil contempt has two steps: First, "the movant bears the initial burden of proving, by clear and convincing evidence, the defendant's noncompliance with a court order." *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010) (quotation omitted). The movant must, accordingly, demonstrate that "1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*, 261 F.3d 1037, 1047 (11th Cir. 2001) (quoting *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)). Second, after that burden is satisfied, "the burden shifts to the alleged contemnor to explain his noncompliance at a show cause hearing." *Thomas*, 594 F.3d at 821.

7

"[T]he focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990). "Thus, [i]n a 'show cause' hearing, the party against whom the contempt is sought must show that they did not violate the order or were excused from complying." *Rintin Corp., S.A. v. Domar, Ltd.*, 403 F. Supp. 2d 1201, 1204 (S.D. Fla. 2005).

Here, there is no dispute that the Order was valid and lawful. Magistrate Judge Hunt entered the Order after ADT had adequate notice and the opportunity to be heard—both via a full round of briefing and a hearing. (*See* dkts. 12, 15, 27.) ADT did not object to entry of the Order. *See* Fed. R. Civ. P. 59(a). Nor, of course, is there any credible argument that ADT is incapable of providing the notice whenever conducting settlement discussions with a class member.

The Order is clear and ADT violated it. The Order requires ADT to provide the Court-ordered notice "when conducting *any settlement discussions* with potential class members." (Dkt. 33 at 5 (emphasis added).) Nothing in the text of the Order gives ADT the right to choose which conversations warrant the notice and which don't, nor does ADT get to decide which parts of the notice are required and which can be left out of any given conversation. And nothing in the Order permits ADT to call class members on the phone and secure their agreement in principle to release ADT without disclosing the contents of the notice, only to provide the notice as a smaller-text footnote when consummating the deal.

The Court does not have to consider the Order in a vacuum, instead, the Court can look to the text of the Order as well as the context in which it was made. *Kleiner*, 751 F.2d at 1200 ("Viewed in context, the import of the resulting order was unmistakable."). Plaintiff specifically

8

moved because she believed class members were not being provided material information during ADT's original phone campaign. (*See* dkt. 8 at 4.) Indeed, the discussion at the hearing on Plaintiff's motion for a protective order was focused entirely on what ADT was saying on its phone calls to class members. ADT's counsel argued, at the hearing, that ADT was already agreeing to provide certain information to Class Members—specifically on the phone when customer service representatives called. (*See* Ex. 1 at 5:11–13 ("[T]hat information has been put out there in the calls that have occurred since the filing of this lawsuit, and we're willing to continue to do that.") The entire debate, at the hearing, was framed as what had to be provided orally. (*See* dkt. 8 at 7–8; *see also* Ex. 1 at 16:19–22 ("THE COURT: . . . I mean, you [ADT] agree that when you contact people you have to give them a reasonable description of what the -- what action is giving rise to the lawsuit."); *see also id.* 17:12–14 ("THE COURT: All right. Well, if you're talking about the nature of the contact being oral, are you guys able to work out essentially a script?"); *see also id.* 23:19–22 ("THE COURT: Okay. Then by agreement you're not to engage in any more consultation with customers regarding this issue because you're going to be trying to work out the parameters of what needs to be said tomorrow[.]"). The resulting Order, accordingly, does not limit its effect to in-writing communications. (*See* dkt. 33 at 5.)

ADT seems to argue that it was not obligated to provide the notice on the phone because the Court did not enter Plaintiff's proposed language which addressed phone communications separately. (*See* Eblen E-mail, Ex. 2-D; *see also* Pl.'s Proposed Order, Ex. 2-A.) But because the hearing was focused on oral communications, the Court did not even recognize this question to be in dispute, observing instead that "the Parties submitted to this Court competing language as what Defendant should say *to any prospective class members when discussing settlement*." (Dkt.

9

33 at 4 (emphasis added).) And if this were somehow not clear enough, ADT's language in its proposed order specifically requested that the scope of the order be limited to in-writing communications, in which it would be ordered only to "communicate the following information in writing alongside any future settlement offers to potential class members[.]" (Def.'s Proposed Order, Ex. 2-B at 1.) The Court did not adopt that formulation either, instead flatly requiring the Notice "when" communicating any settlement offers with Class Members. (Dkt. 33 at 4, 5.) ADT asked for permission to avoid communicating this information orally, but the Court gave clear guidance to the contrary.

After a motion and hearing that were focused on ADT's oral communications with class members, and the Court's rejection of ADT's proposed order that would have limited the scope of the Order to writing, ADT's actions are inexcusable. The Court's mandate to ADT was clear: ADT had to comply with the Order "when conducting any settlement discussions[.]" (Dkt. 33 at 5); *cf. Rintin Corp*, 403 F. Supp. 2d at 1205 (finding directive to "dismiss the foreign lawsuits" was clear). Otherwise—exactly as happened here—ADT could evade the purpose and effect of the Order entirely. ADT could engage in a fulsome settlement discussion and persuade a class member to accept *before* making any mention of the existence of the case, the value of the claims, or any contact information for an attorney. Everything about ADT's communications are designed to get the class members to rely on what had been told to them orally and simply respond to the e-mail with their agreement. (*See* Richardson E-mail, *supra*.) ADT does not appear to accept an e-mail reply as contractual acceptance in any other dealing with its customers (*see* Doty Contract, dkt. 55); here, it is acceptable only to make the transition from oral

agreement to written agreement seamless. ADT cannot bury and ineffectuate the Court's notice consistent with the Court's Order.

ADT also appears to believe that this issue is somehow "functionally moot" because ADT represents that it is no longer calling people. (*See* Eblen E-Mail, Ex. 2-D at 1.) To the contrary, it is deeply concerning that ADT feels it can violate an Order scot-free as long as it stops before Plaintiff finds out—particularly where ADT may have obtained releases in violation of the Order, discussed below. *Mercer v. Mitchell*, 908 F.2d 763, 769 n.10 (11th Cir. 1990) (A party cannot "flout or willfully [] disobey a court order by violating the order and then complying with the order before the contempt proceeding begins."). ADT continues to maintain that it may communicate with putative class members in violation of the Order; simply holding off does not prevent the Court from intervening before more harm is done. *Id.* ("[T]he court may conclude that, even though the defendant is in technical compliance at the time of the proceeding, the defendant's prior conduct indicates that he will not continue to comply with the court's injunction."). This issue is not moot.

Finally, ADT's refusal to provide the script that ADT representatives used when contacting class members is similarly telling. (*See* Ex. 2-E.) ADT has effectively taken the position that it had no obligation to provide the notice until class members were picking up the digital "pen" to sign ADT's release. The putative class members' experiences described above and ADT's own refusal to come clean about what it was saying to people can lead to only one conclusion: ADT was not providing the notice when calling putative class members, and likely was casting the settlement in a light that it does not want Plaintiff (or this Court) to see. (*See* Wright Decl. ¶ 3 (describing release as a "reimbursement").) What ADT was doing, we can be

11

sure, was trying to buy off class members' claims while concealing material information, in hopes of getting class members to accept a lowball offer—this time, in violation of a Court Order.

"The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief." *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991) (quoting *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987)). The powers of the Court in remedying civil contempt are "particularly broad and only limited by the requirement that they be compensatory." *F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013) (quoting *Howard Johnson Co.*, 892 F.2d at 1521). Courts invalidate settlement releases obtained by defendants through improper means because, otherwise, full relief would be impossible. *See, e.g.*, *Cty. of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, at *6 (N.D. Cal. July 8, 2010) (invalidating releases obtained in violation of Rule 23, as part of granting protective order); *Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-21244-CIV, 2015 WL 9592535, at *7 (S.D. Fla. Dec. 31, 2015) (invalidating arbitration agreements pursuant to managerial power); *cf. also Cf. F.T.C. v. Leshin*, 618 F.3d 1221, 1237 (11th Cir. 2010) (acknowledging that "disgorgement" remedy in contempt proceedings of ill-gotten profits is appropriate). Plaintiff accordingly requests that any releases procured in violation of the Court's Order be invalidated.

Plaintiff further requests that her attorneys' fees incurred in enforcing the Court's Order be paid. *Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000) (fees "reasonably and necessarily incurred in the attempt to enforce compliance" may be ordered in contempt proceedings).

12

## CONCLUSION AND REQUEST FOR HEARING

Plaintiff respectfully requests that the Court enter an order to show cause why ADT LLC should not be held in contempt of Court for violation of the Court's June 22, 2020 Order, why any releases obtained in violation of the Order should not be invalidated, and why Plaintiff's attorneys' fees incurred in enforcing the Court's June 22, 2020 Order should not be paid. Plaintiff further requests that the Court provide any alternative or further relief as maybe appropriate and just.

Plaintiff requests a hearing on this Motion for Order to Show Cause, which would assist the Court in answering any questions it might have of ADT as a factual matter, or Plaintiff's view of the Court's Order. Plaintiff estimates oral argument would not exceed ten minutes per side.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

As detailed above, counsel for Plaintiff has conferred with ADT's counsel in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Respectfully submitted,

**SHANA DOTY**, individually and on behalf of all others similarly situated,

Dated: August 12, 2020

By: /s/ Christopher Michael Brown
*One of Plaintiff's Attorneys*

Jay Edelson*
jedelson@edelson.com
Benjamin H. Richman*
brichman@edelson.com
J. Eli Wade-Scott*
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor

13

Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Matthew R. McCarley*
mmccarley@fnlawfirm.com
Christopher Michael Brown
cbrown@fnlawfirm.com
FEARS NACHAWATI, PLLC
5473 Blair Road
Dallas, Texas 75231
Tel: 214.890.0711
Fax: 214.890.0712

Amy M. Carter*
amy@clgtrial.com
Heather V. Davis*
hdavis@clgtrial.com
CARTER LAW GROUP, P.C.
5473 Blair Rd.
Dallas, Texas 75231
Telephone: (214) 390-4173

*Admitted Pro Hac Vice*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to counsel or parties of record.

Dated: August 12, 2020                    By: /s/ Christopher Michael Brown
                                          *One of Plaintiff's Attorneys*