**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

SHANA DOTY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ADT, LLC d/b/a ADT SECURITY SERVICES, a Delaware limited liability company,

Defendant.

Case No. 0:20-cv-60972-AHS

**DEFENDANT ADT LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE**

Since the Court's Order on June 22, 2020 (ECF No. 33), ADT sent every customer considering a settlement the exact written notice (the "Notice") the Court required, allowing the customer to choose between directly resolving their dispute with ADT or retaining counsel and pursuing litigation. Ms. Doty's Motion for Order to Show Cause ("Motion") is an improper attempt to contort the Court's Order into the more onerous obligations Plaintiff previously requested but the Court refused to require.

Furthermore, the evidence Ms. Doty submitted does not support her requested relief; if anything, her declarations undermine her Motion because each declarant knew about the class action and made the informed decision not to settle and instead hired Ms. Doty's lawyers. Indeed, one declarant admits ADT exceeded the Order's requirement by informing her twice about the class action—once verbally, and again with the Notice. Adding further context to Plaintiff's carefully-tailored declarations only bolsters that conclusion.

The Court should deny Plaintiff's motion because ADT fully complied with the Order. The extraordinary remedy of contempt that Plaintiff seeks is really a second run at the relief Plaintiff sought in earlier motion practice but the Court declined to include in the Order. The Court should not condone her effort to re-litigate settled issues and deny the Motion because (1) ADT complied with the requirement to send the Notice to customers considering settlement; (2) the Order is, at most, ambiguous as to exactly when sending the Notice was required, which dooms her arguments under controlling law; and (3) Plaintiff failed to demonstrate bad faith.

ADT also requests that the Court order Plaintiff to pay the fees and costs incurred in responding to this Motion, which would have been entirely unnecessary if Plaintiff's counsel had properly conferred with ADT's counsel as the Local Rules require. Plaintiff never mentioned any intent to file a motion and, more specifically, never discussed what relief she may seek. As demonstrated below, had she done so, she would have learned the relief she requests—invalidating releases entered without providing the Notice—is entirely non-existent.

**FACTUAL AND PROCEDURAL BACKGROUND**

This lawsuit relates to an isolated series of events – all due to the independent, criminal conduct of a former ADT service technician in the Dallas, Texas area who abused his access to 220 Dallas-area customer accounts. After being made aware of this conduct, ADT terminated him and reported him to law enforcement. ADT also launched a broad investigation to determine the scope of the technician's activity and to ensure no other technicians had engaged in similar misconduct.

In late April 2020, ADT then began the difficult, but vital, process of personally notifying and speaking with those affected customers to work toward regaining those individuals' trust. ADT's Chief Customer Officer, Jamie Haenggi, and a team of Customer Concierge

Representatives, led these efforts. *See* Declaration of Jamie Haenggi, ¶¶2-4 (Ex. A). The outreach focused on informing customers what happened, being transparent, assuring them ADT was there to help, and beginning to restore customer trust. *Id.* Settling cases was not the objective of the initial outreach. *Id.* Many customers appreciated ADT's direct outreach, proactive efforts, and accepted ADT's offer to make things right. *Id*.

Over time, ADT did engage in settlement discussions with some customers and reached some settlements. *Id.* ¶¶5-10. Even well before this class action, however, some customers declined the opportunity to resolve their dispute directly with ADT and instead chose to retain counsel. *Id*. ADT never discouraged this and instead made clear ADT's objectives would remain the same even if the customer retained a lawyer. For those customers represented by counsel, ADT took the same approach in trying to resolve those matters through the customers' lawyers. *Id*.

ADT's own self-reporting of this incident also led to media attention informing the public at large what had happened.[1] This spawned substantial Dallas-based attorney advertising and other media attention. The filing of this class action in mid-May 2020 generated another round of media attention and attorney advertising.[2]

---

1 *See, e.g.*, LaVendrick Smith and Dom DiFurio, *ADT employee had access to more than 200 customers' home security systems in the Dallas area, company says*, THE DALLAS MORNING NEWS (April 23, 2020), https://www.dallasnews.com/business/2020/04/23/adt-employee-had-access-to-more-than-200-dfw-customers-home-security-systems-company-says/.

2 *See, e.g.*, *Suit: ADT employee spied on customers' home security systems*, ASSOCIATED PRESS (May 19, 2020), https://apnews.com/6e885b29749e2db50f8f628f212cb37c; Diana Zoga, *Lawsuits: Former ADT Employee Accessed 220 NTX Customer Cameras Without Permission*, NBCDFW (May 19, 2020), https://www.nbcdfw.com/news/local/lawsuits-former-adt-employee-accessed-220-ntx-customer-cameras-without-permission/2372549/.

### A. Plaintiff's Counsel Files Two Separate Class Actions Aimed at Avoiding the Arbitration Clauses in All But 27 of the 220 Impacted Customers' Contracts.

The same day Ms. Doty filed her case, her counsel also filed a separate class action before this Court based on the exact same conduct of ADT's former installer. *Alexia Preddy v. ADT LLC*, Case No. 0:20-cv-60971 (S.D. Fla. 2020) ("*Preddy*"). Of the 220 customers whose accounts are at issue, 193 of them have a contract with ADT containing the following provision agreeing to resolve disputes like this one in individual arbitration:

> **ARBITRATION**. ADT AND I AGREE THAT ANY AND ALL DISPUTES BETWEEN US SHALL BE GOVERNED BY THIS BINDING ARBITRATION AGREEMENT. . . .

Contract at ¶ 7 (Ex. B). One hundred ninety-three customers likewise waived the right to pursue a class action against ADT:

> IF EITHER PARTY ELECTS TO ARBITRATE A DISPUTE, ADT AND I WAIVE THE RIGHT TO A JURY TRIAL AND TO OTHERWISE LITIGATE THE DISPUTE IN COURT. BY AGREEING TO ARBITRATE, THE PARTIES MAY ALSO WAIVE OTHER RIGHTS THAT WOULD OTHERWISE BE AVAILABLE IN COURT. . . . .

*Id.*

Ms. Doty seeks to represent the putative class of 27 customers who did not agree to resolve this dispute through individual arbitration. Ms. Preddy seeks to be the class representative for an unknown universe of people who may have been in the homes of customers impacted by this incident. Ms. Preddy is the adult daughter of ADT customer LaTasha Dorsey, whose contract with ADT contained an agreement to arbitrate. A motion to compel Ms. Preddy to arbitrate her dispute with ADT based on equitable estoppel is pending before the Court. *See Preddy* (ECF No. 38); *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 474 (5th Cir. 2010).

**B. Plaintiff Endeavors to Shut Down ADT's Ongoing Dialogue With Customers Immediately After Filing the Above Lawsuits.**

Two days after filing suit, Plaintiff sent a letter seeking control over ADT's communications with its customers; this included pre-approval of settlement conversations with customers and forcing ADT to assign dollar values to claims when speaking with customers. *See* May 20, 2020 Letter (seeking relief such as control and functional advertisement by telling customers the claims held a certain value) (ECF No. 8-2). ADT opposed this effort as an attempt to force ADT to advertise for the Plaintiff's purported class action and infringe on its legal right to communicate with its customers. This disagreement led to motion practice before Magistrate Judge Hunt. *See, e.g.* Plaintiff's Motion for Protective Order (ECF No. 8); ADT Response in Opposition (ECF No. 12); Plaintiff's Reply in Support (ECF No. 18).

At the hearing on the motion, Judge Hunt encouraged the parties to discuss a resolution of the motion. While ADT previously argued that the law only required it to provide verbal information so long as the communication was not misleading or coercive, it became apparent to ADT that such a resolution would lead inevitably to renewed motion practice since any *post hoc* analysis of the customer communications by the parties would depend upon subjectivity, hearsay and inherently biased interpretations. Therefore, ADT proposed language it would send in writing via email before settling claims. *See* ADT's Proposed Order (ECF No. 57-4) (representing "ADT will communicate the following information *in writing*") (emphasis added). ADT's submission made no representation about utilizing a verbal script in addition to the proposed emailed notice. *Id.*

**C. Plaintiff's Proposed Relief Requested Both a Written and Verbal Script.**

Plaintiff requested both a written notice and a verbal script (as well other language that ADT contended was simply inappropriately advertising Plaintiff's class action). Specifically, Plaintiff's proposed order requested:

> ADT representatives are not restricted from speaking with individuals about the circumstances leading to the case or the settlement offer, but if ADT representatives choose to communicate with class members about these topics they must read the notice below before continuing. ADT representatives may not undermine the purpose or language below in any of those communications.

Plaintiff's Proposed Order (ECF No. 57-3).

**D. The Court Adopted ADT's Proposal, with the Addition of a Hyperlink.**

The Court's Order adopted ADT's proposed order verbatim with one modification—adding a hyperlink within the written Notice. Order, June 22, 2020 (ECF No. 33). In reaching that conclusion, the Court observed: "The undersigned finds that Defendant's suggested language represents a good-faith effort to communicate the necessary information to prospective class members." *Id.* With the addition of a hyperlink to ADT's proposed notice, the Court concluded:

> The undersigned finds that with this addition, potential plaintiffs will easily have access to sufficient information to enable any potential class member to determine whether to accept the settlement offer, as well as the effect of settling and available avenues for pursuing a claim should the settlement offer not be accepted. It also addresses Plaintiff's requests that any notice include a copy of Plaintiff's complaint, identify Plaintiff's counsel and provide their contact information, include a neutral description of the claims, and provide notice of Plaintiff's evaluation of the claims, as all such information is contained within the linked complaint. As such, Plaintiff's Motion is GRANTED to the extent that Defendant shall include a link to Plaintiff's complaint in its notice to any prospective class member. Plaintiff's Motion is otherwise DENIED.

*Id.* at p. 5. The Court Order did not require—as Plaintiff's order had proposed—that ADT read a verbal script *and* send a written Notice before settling; it also denied all other requested relief

beyond ADT's proposed notice. *Id*. Nowhere does the Order dictate a precise moment when the Notice should be sent to a customer considering settlement. *Id*.

**E. ADT Sent the Required Notice, with a Hyperlink, to All Customers Considering Settlement, Allowing Them to Choose Between Settlement and Retaining Counsel.**

Since the Order, ADT has resolved claims with 13 customers and all 13 received the required Notice *before* accepting ADT's settlement offer. Haenggi Decl. ¶¶11-17 (Ex. A). ADT also sent the Notice to another four customers including Ms. Richardson. *Id*. These customers chose not to settle. *Id*. Both before and after the Notice, some customers have retained lawyers while others have preferred working directly with ADT. *Id*.

ADT ended its proactive customer outreach efforts in late July 2020. *Id.* ¶18. If customers initiate communications with ADT regarding concerns or a claim they may have, ADT remains committed to working with its customers to resolve concerns or discuss settlement, whether directly or through counsel for those that decided to retain lawyers. *Id*.

1. <u>ADT's Communications with Declarant LaTonya Richardson</u>.

Before Ms. Richardson retained the lawyers in this case and submitted a declaration with this Motion, there were numerous email communications and phone calls between her and ADT customer care representatives from April 28, 2020 to July 1, 2020. Fauveir Decl., ¶¶ 4-8 (Ex. C).

ADT spoke to Ms. Richardson on June 23, 2020 when Ms. Fauveir followed up again related to the above subject. *Id*. In that conversation, Ms. Richardson demanded a $10,000 settlement because of the ADT technician's conduct. *Id*. Ms. Fauveir was caught off guard by this demand and informed Ms. Richardson that she needed to review her account and get back to her about her demand. *Id*.

On July 1, 2020, Ms. Fauveir contacted Ms. Richardson in response to her demand, informed her verbally that there were class actions filed; offered $5,000 as a settlement offer;

informed her the offer would be confirmed in writing; and told Ms. Richardson that if she wished to accept the offer, she needed to follow the instructions in the email. *Id*. This email text conveying the settlement offer has remained the same since April 2020, with the exception of the addition of the Notice. *Id.* Ms. Fauveir sent the offer and the Notice (which occupies over half the body of the email, not a footnote) immediately after speaking with Ms. Richardson. *Id*. As set forth below, Ms. Richardson politely declined the offer:

**From:** Latonya Richardson <trich4uy@aol.com>
**Sent:** Wednesday, July 1, 2020 12:25 PM
**To:** Fauveir, Juanita
**Subject:** Re: Dedicated support regarding your ADT account

**CAUTION:** This is an EXTERNAL email. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Juanita, after future consideration. We have decided to not accept this offer and to go a different route. We appreciate your assistance thus far throughout this matter.

Regards,
Tonya Richardson

Sent from my iPhone

On Jul 1, 2020, at 8:53 AM, Fauveir, Juanita <jfauveir@adt.com> wrote:

Good Morning Mrs. Latonya Richardson

Per our discussion this morning, attached is the release which outlines what we agreed upon.

To finalize this document please sign, scan and email the attached to your return reply. If you are unable to print or scan the document, you can take the following steps:

- Type the date in and your name in the signature line and return the document by email
- When responding back please copy and paste the below statement into the body of your email –
- *"My name typed on the attached release is meant to serve as my signature and reflects my agreement. Signed, Customer name here."*

Most sincerely,

**NOTICE REGARDING SETTLEMENT OFFER**

As you are aware, an ADT technician accessed the ADT Pulse application of your home security system, which allowed him potential remote access to any cameras in your home. You are being offered a settlement by ADT LLC for any lawsuit, injuries, or claims you may have against ADT.

ADT has been sued in a class action claiming that ADT violated several laws when its technician accessed your security cameras. The case is called *Doty v. ADT LLC*, 20-cv-60972-RKA (S.D. Fla.), and you can view the complaint by clicking here. You may or may not be eligible to join that proposed class action if you choose to do so. If the Court allows the case to proceed as a class action, it will appoint lawyers to represent the class.

Litigation is inherently unpredictable and can result in greater or less recovery than the settlement offer or no recovery at all. If you accept this settlement, you will give up all your rights against ADT and will not be able to recover through the class action or any other suit or proceeding related to the access of your Pulse system.

1

If you have any questions about the settlement offer or how much your case is worth, you should contact a lawyer.

*Id.*

2. ADT's Communications with Ms. Minor.

Ms. Fauveir also interacted with Christa Minor. *Id*. at 9-10. On June 26, 2020, Ms. Fauveir called Ms. Minor. *Id*. This conversation was more like the April 2020 conversations—which did

not involve any conversation about settlement—because ADT did not reach Ms. Minor when it previously called her in April 2020 to explain what happened with her account. *Id.* When Ms. Minor heard what had happened, she was very upset and the conversation focused on addressing her concerns, trying to comfort her, regaining her trust and making things right. *Id*. They did not discuss settlement on that call. *Id*.

Ms. Fauveir called Ms. Minor again on June 30, 2020. *Id*. At that time, Ms. Fauveir may have explained that ADT would be willing to reimburse her all the money she had ever paid ADT. *Id*. If Ms. Minor had shown any interest in pursuing that conversation, Ms. Fauveir would have sent the Notice. *Id*. There were no additional communications. *Id*.

3. ADT's Communications with Ms. Wright.

ADT Concierge Representative Sonja Gheen spoke with Freya Wright on June 24, 2020. Gheen Declaration, ¶16 (Ex. D). The purpose of the call was to see how she was doing and ask whether ADT could do anything else to make things right. *Id*. ¶¶17-9. Ms. Gheen informed her that ADT had offered some customers a refund of all money paid for the life of their account, and inquired whether Ms. Wright would be interested. *Id*. Ms. Wright said she was not interested in discussing this topic until she first spoke with her partner. *Id*. Ms. Wright informed Mr. Gheen that they would reach back out if they were interested in pursuing the subject further. *Id*. Ms. Gheen did not send the Notice because Ms. Wright was not interested in discussing settlement. *Id*. Ms. Wright told Ms. Gheen she would call ADT back if she was interested in discussing settlement but she never called back. *Id*.

**F. Plaintiff's Failure to Confer with ADT Regarding the Requested Relief.**

In the correspondence Plaintiff attached to the Motion, ADT made clear (1) it was no longer contacting customers regarding settlement; and (2) it sent the required Notice to all customers,

including one of counsel's clients, LaTonya Richardson. Eblen 7-28-2020 Email (ECF No. 57-6). After ADT emailed a copy of the Notice sent to Ms. Richardson and invited further discussion about any areas of disagreement, Plaintiff never responded. Two weeks later, she filed this Motion. As the emails show, throughout the process, counsel never mentioned any intention to seek relief from the Court through a motion, never explained what type of motion he intended to file, and never discussed what relief would be requested in the motion to facilitate an appropriate conferral process.

## ARGUMENT

### A. The Court Should Deny Plaintiff's Motion Because They Have Not Shown a Violation of the Order, Much Less One by "Clear and Convincing Evidence".

The Court should only issue a show cause order where the movants prove *by clear and convincing evidence*, the alleged contemnors' noncompliance with a prior court order. *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010). Once the movants make a prima facie showing of a violation, the burden shifts to the alleged contemnors to produce evidence explaining their noncompliance at a show cause hearing. *Id*. Where the movant fails to show a violation of the Order by clear and convincing evidence, the burden never shifts to an opposing party to produce evidence explaining the circumstances of what happened. *Id.*

Civil contempt "is a severe remedy," and the burden on a litigant requesting that sanction is therefore "a high one." *In re Roth*, 935 F.3d 1270, 1277 (11th Cir. 2019) (quoting *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1802 (2019)). In particular, a party seeking civil contempt for noncompliance with a court order must demonstrate by clear and convincing evidence that: "(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co. v. N.L.R.B.*, 484

F.3d 1288, 1291 (11th Cir. 2007) (citation and emphasis omitted); see also *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010) (citation omitted).

In determining whether the violated order is clear and unambiguous, a court must reasonably interpret the order and must "construe any ambiguities ... in a light favorable to the person charged with contempt." *All Web Leads, Inc. v. D'Amico*, No. 18-80571-CV, 2018 WL 6522167, at *2 (S.D. Fla. Nov. 9, 2018). In analyzing a respondent's diligence, courts "examine the defendant's actions and consider whether they are based on a good faith and reasonable interpretation of the court order." *Schmitz v. St. Regis Paper Co.*, 758 F.Supp. 922, 927 (S.D.N.Y. 1991); S. *Beach Suncare, Inc. v. Sea & Ski Corp.*, No. 98-1114-CIV-MORENO, 1999 WL 350458, at *5 (S.D. Fla. May 17, 1999); *Taggart*, 139 S. Ct. 1795 (civil contempt "should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct"). The Order must specifically preclude the complained of conduct. *S. Beach Suncare, Inc*, 1999 WL 350458, at *6 (noting the Court must find that its injunction was "clear and unambiguous," before holding a party in contempt); *United States v. ITT Continental Baking Co*., 420 U.S. 223, 237 (1975) (suggesting that "a party can only be held in contempt for behavior clearly prohibited by a court order within its four corners"). Indeed, where two reasonable interpretations of an Order exist, a party should not be held in contempt. *Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*, 261 F.3d 1037, 1061–62 (11th Cir. 2001).

Finally, Defendants must act in "bad faith" to be held in contempt. *See Alhassid v. Nationstar Mortg.*, LLC, No. 14-CV-20484-BB, 2018 WL 5118508, at *3 (S.D. Fla. Oct. 18, 2018). In *Alhassid*, for example, the Court found that Defendant (mortgage company) technically violated the Court's prohibition on "sending a default letter until taxes are actually delinquent," because it sent a default letter to Plaintiff, who was no longer delinquent on her taxes after paying

them after they were due. However, the Court found that Defendant did not act with "conscious doing of a wrong because of dishonest purpose or moral obliquity" in doing so, because Defendant believed Plaintiff was still delinquent on her taxes, as Plaintiff failed to notify Defendant that she had paid them. *Id.* Thus, contempt was inappropriate and the Court denied Plaintiff's motion for a show cause order.

1. Plaintiff Falls Woefully Short of "Clear and Convincing" Evidence of Non-Compliance with the Order.

As established, ADT sent the Notice to customers considering settlement, including those customers who made an informed choice to resolve their claim rather than pursue litigation. And all 13 who settled after the Order received the Notice before choosing to settle. Plaintiff's arguments to the contrary depend upon a false premise—that the Court required ADT to provide written ***and verbal*** notice, when Plaintiff is well aware the Court rejected her proposed order that attempted to impose *both* obligations. Order, June 22, 2020 (ECF No. 33). The Order instead required ADT to use its proposed *written notice*, with the addition of a hyperlink (a requirement consistent only with written communications). In reality, Plaintiff's Motion is a second crack at obtaining the additional relief the Court already decided she was not entitled to, which the Court should again reject.

How would ADT convey a verbal hyperlink to customers? The self-evident answer to that question further underscores the fallacy of Plaintiff's argument. The Court Order added the hyperlink to the *written* Notice so that customers could merely click the link in the email and access the Doty complaint without having to hunt for it on PACER or other search engines. Order, June 22, 2020, p. 5 ("Defendant must also provide a link so that prospective class members can freely access the complaint should they so choose."). Plaintiff's contention that the Order required the

Notice to also be used as a verbatim verbal script is unreasonable considering the operation and purpose of the Court mandated hyperlink.

Finally, that Plaintiff devoted significant time in the Motion toward rehashing several other arguments the Order already rejected corroborates that her real goal is to take a second bite at the apple. As with her argument for a verbal script, Plaintiff again belabors her inaccurate belief that ADT's settlement offers to customers were too low. Before the Order, Plaintiff argued vehemently that the Court should require ADT to make a statement to customers regarding the damage valuations, and included the following verbiage in her proposed order to the Court: "The attorneys representing the consumer in the *Doty* case believe that the claims have significant value that far exceeds what ADT is offering in settlements." Plaintiff's Proposed Order, (ECF No. 57-3). As with her renewed effort for a verbal script, however, the Court declined Plaintiff's proposed statement, instead endorsing the following statement in the Order: "Litigation is inherently unpredictable and can result in greater or less recovery than the settlement offer or no recovery at all." Order, June 22. 2020, p. 4, n. 2. Her attempt to relitigate multiple issues reveals her Motion's true objectives; and it confirms that her desired reading of the Order is incorrect.

Because the Motion depends upon an intentionally inaccurate reading of the Order, and because ADT complied with the actual Order, the Court should deny the Motion.

2. <u>At Most, Plaintiff Can Show an Ambiguity in the Order, Which Requires the Denial of Her Motion</u>.

Even affording Plaintiff's declarations the most generous of inferences (and the law requires just the opposite), the declarations only support an argument that, at most, the Order is ambiguous. That conclusion is also fatal to her Motion. *Leshin*, 618 F.3d at 1232.

As discussed above, because there is no requirement for verbal *and* written notice to customers, Plaintiff's contrary arguments are unreasonable and, hence, do not even create an

ambiguity. Her other arguments depend upon accepting her desired interpretation of *precisely when* the Order required ADT to send the Notice. But there is no explicit mandate dictating the precise moment when ADT had to send the Notice. Read in proper context—with an appreciation for the purpose behind the Notice—it is clear that ADT had to provide Notice before a customer decided whether to settle, which is exactly what ADT did.[3]

The Notice's objective was to provide customers sufficient information to exercise their right to choose whether to settle directly with ADT or seek representation. Order, p. 4 ("any potential plaintiffs must give informed consent to settle"). That always occurred. As the Court explained, with ADT's Notice, customers considering settlement "will *easily* have access to sufficient information to enable any potential class member to determine whether to accept the settlement offer, as well as the effect of settling and available avenues for pursuing a claim should the settlement offer not be accepted." *Id.* p. 5 (emphasis added). Stated differently, before the customer chose whether to settle and forego her right to pursue other recourses, she needed the Notice to provide informed consent. Because that always happened, the Notice served the letter and spirit of the Order.

Plaintiff's arguments would suggest, at most, an ambiguity in the Order; therefore, she has failed to meet her burden for this Court to enter a show-cause order. *See All Web Leads, Inc.*, 2018 WL 6522167, at *2.

3 The accusation that ADT obtained verbal settlements and then sent the Notice as an afterthought is false and unsupported. Plaintiff's own declarant Ms. Richardson proves as much. She made the first demand, ADT countered and sent the Notice explaining how to accept and she declined the offer. Moreover, ADT's declarations explain that the email language required after entry of the Court's Order was used throughout the process and the customers knew that in order to accept the offer they had to follow the process set forth in the email.

3. ADT's Customer Concierge Representatives Did Not Act in Bad Faith.

Plaintiff's Motion also fails to show bad faith. *Alhassid*, 2018 WL 5118508, at *3. As ADT's declarations demonstrate, Plaintiff's characterizations of ADT's customer outreach efforts are hyperbolic advocacy unsupported by actual evidence. The purpose of ADT's communications were to be transparent, provide information, restore trust and make things right. Where ADT engaged in settlement conversations, it did so fairly and openly. Throughout the process some customers have chosen to retain counsel and some have preferred to deal directly with ADT. That customers have made divergent choices between settling, retaining Texas lawyers to pursue claims individually or joining these cases demonstrates they have continually exercised freewill based upon informed consent. Nothing in the Motion refutes that conclusion.

If anything, Ms. Doty's submissions support the opposite of bad faith. In particular, Ms. Richardson received more information that the Notice required—verbal notice during a call and a follow-up email with the Notice. She used this information to inform ADT that "she was going a different direction." That evidence undermines Plaintiff's Motion, and certainly does not support the severe remedy of contempt by clear and convincing evidence.

The Wright and Minor declarations also do not show bad faith. Ms. Wright told ADT she was not interested in discussing settlement until she met with her partner. She then never got back to ADT and, obviously, was aware of the class actions because she made the informed decision to sign up as a client with the lawyers in this case.

Ms. Minor's experience was similar. She first spoke with ADT about the details of what happened, not settlement. In a second conversation, she spoke generally about whether she would be interested in a refund of money paid to ADT. Sometime after those conversations, Ms. Minor

decided to retain the lawyers in this case. Nothing about these conversations suggests bad faith by ADT's employees, providing another basis to deny the Motion.

**B. Because Plaintiff Failed to Properly Confer Under the Local Rules, The Court Should Award ADT Fees and Costs.**

The only specific remedy Plaintiff seeks is the invalidation of releases obtained where the Notice was not provided. Had Plaintiff properly conferred before filing this Motion (by advising defense counsel of the motion she intend to file and the relief she was seeking – as the Local Rules contemplate), she would have learned there are no such releases. Instead, after ADT's counsel sent Plaintiff's counsel the Richardson Notice, all communication ceased for two weeks until Plaintiff filed this Motion. Not only is that not a proper conferral under the Local Rules, warranting an award of fees and costs,[4] Plaintiff's entire Motion is misplaced because the only specific relief requested is a non-existent remedy.

Local Rule 7.1(a)(3) requires counsel to confer with all parties or non-parties who may be affected by the relief sought in the motion. LR 7.1(a)(3) (requiring parties to confer "in a good faith effort to resolve by agreement *the issues to be raised in the motion*.") (emphasis supplied). This rule provides that failure to comply "may be cause" to "grant or deny the motion and impose on counsel an appropriate sanction," which "may include an order to pay the amount of the reasonable expenses incurred because of the violation." *Id.*

Strict compliance with Local Rule 7.1(a)(3) is very important. *Marler v. U-Store-It Mini Warehouse Co.*, No. 09-60613-CIV, 2011 WL 1430262, at *2 (S.D. Fla. Apr. 14, 2011). The non-moving party does not always oppose relief sought by the moving party. *Id.* Compliance with this rule may save the parties the time and costs associated with filing and responding to a motion.

[4] For the reasons discussed throughout this opposition, ulterior motives of trying to modify the Order and garner attention to recruit class members were the likely drivers behind this filing. That, too, supports awarding fees and costs.

*Club Madonna, Inc. v. City of Miami Beach*, No. 1323762, 2015 WL 5559894, at *9 (S.D. Fla. Sept. 22, 2015).

As the correspondence Plaintiff attached to her Motion demonstrates, there was no dialogue about an intent to file a motion, what type of motion would be filed and what relief Plaintiff intended to seek in the motion. Instead, the communication trail ended after ADT provided a copy of the Notice Ms. Richardson received, leaving the impression that the issue had been resolved. And ADT's first notice of the fact that a Motion would be filed, or the relief sought, was the filing of the Motion itself. Such conduct does not comply with the Local Rules and the Court should award ADT fees and costs incurred in responding to this Motion.

## CONCLUSION

The Court should deny the Motion and award ADT its fees and costs.

Dated August 26, 2020.

Respectfully submitted,

*Jennifer A. McLoone*______________________
Alfred J. Saikali (Florida Bar No. 178195)
E-Mail: asaikali@shb.com
Jennifer A. McLoone (Florida Bar No. 029234)
E-Mail: jmcloone@shb.com
SHOOK, HARDY & BACON L.L.P.
Citigroup Center, Suite 3200
201 South Biscayne Blvd.
Miami, Florida 33131
T: (305) 358-5171

-and-

Charles C. Eblen (*pro hac vice)*
E-Mail: ceblen@shb.com
Jason R. Scott (*pro hac vice*)
E-Mail: jscott@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
T: (816) 474-6550

***Counsel for ADT LLC***