UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60972-CIV-SINGHAL

SHANA DOTY, individually and on behalf of all
others similarly situated,

    Plaintiff,

v.

ADT, LLC d/b/a ADT SECURITY
SERVICES,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant, ADT, LLC's ("ADT") Motion to Dismiss Amended Complaint (DE [58]). The matter has been fully briefed and the Court has heard argument of counsel. For the reasons set forth below, ADT's Motion to Dismiss Amended Complaint is granted in part and denied in part.

I.    BACKGROUND

Plaintiff Shana Doty ("Plaintiff") contracted with ADT for its Pulse home alarm service which provided an internet-connected smart home system including camera surveillance inside and outside her home. After several years of service, ADT notified Plaintiff that the employee who installed her system, Telesforo Aviles ("Aviles"), had given himself remote access to her account that enabled him to surreptitiously open locks, disarm the system, and view and download security camera footage from Plaintiff's home. Aviles accessed Plaintiff's home over 70 times and accessed the accounts of hundreds of other ADT customers in Texas.

Plaintiff filed suit[1] against ADT on behalf of herself and a putative class of "[a]ll ADT Pulse customers in the United States whose security systems were remotely accessed by an employee or agent of Defendant ADT without authorization from the customer" and a putative subclass of "[a]ll ADT Pulse customers in the United States whose security systems were remotely accessed by Telesforo Aviles without authorization from the customer." Plaintiff alleges that ADT sold the Pulse security system knowing customers' deep concerns about privacy but failed to disclose that the system contained a flaw that permitted installers to obtain remote access to customers' systems and video surveillance using unauthorized credentials.

The Amended Complaint alleges eight causes of action against ADT: Breach of Contract (First Cause of Action); Negligence (Second Cause of Action); Violation of Texas DTPA (Third Cause of Action); Intrusion Upon Seclusion (Fourth Cause of Action); Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Fifth Cause of Action); Negligent Hiring, Supervision, and Retention (Sixth Cause of Action); Intentional Infliction of Emotional Distress (Seventh Cause of Action); and Privacy Monitoring (Eighth Cause of Action).[2] *See generally*, Am. Compl. (DE [47]).

ADT raises seven grounds to dismiss the Amended Complaint with prejudice: (1) the breach of contract claim fails to identify any term in the parties' contract that ADT allegedly breached; (2) the Texas' Deceptive Trade Practices Act ("DTPA") claim lacks the particularity required by Rule 9(b); (3) the negligence, negligent hiring, and gross

---

[1] A second suit, *Preddy v. ADT, LLC*, Case No. 20-60971-CIV-SINGHAL, was filed on behalf of all individuals in the United States who reside in a household with an ADT Pulse security system but are not account holders. A motion to dismiss in that case is pending, raising both an arbitration issue and the grounds raised in the present motion.
[2] The Amended Complaint also asserts three causes of action against Telesforo Aviles individually. (DE [47]).

negligence claims are not viable under Texas law because Plaintiff fails to allege physical injury; (4) the Amended Complaint fails to allege intentional wrongdoing by ADT that would support claims for intentional infliction of emotional distress and intrusion upon seclusion; (5) the Amended Complaint does not allege conduct by ADT that violated the federal Computer Fraud and Abuse Act; (6) "Privacy monitoring" is not a viable cause of action; and (7) Plaintiff has failed to plead a plausible class.

## II.    LEGAL STANDARDS

### A. Motion to Dismiss Standards

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions;" a "formulaic recitation of the elements of a cause of action will not do*.*" *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss*.*" *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 556 U.S. 449 (2012).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d

3

949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  In reviewing the complaint, the court must do so in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984*).* But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal,* 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

    B. Choice of Law

A federal court sitting in diversity under 28 U.S.C. § 1132(d)(2) applies the choice of law rule of the state in which it is located, in this case Florida.  *U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008).  The applicable test varies depending on the cause of action.  This case involves both contract and tort claims.  Florida applies the "most significant relationship test" as outlined in the Restatement (Second) of Torts to determine choice of law for tort actions.  *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1299 (S.D. Fla. 2017); *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980)).  For contract actions, Florida applies the doctrine of *lex loci contractus* and considers where the contract was executed.  *State Farm Mut. Auto. Ins. Co. v. Roach,* 945 So.2d 1160, 1163 (Fla. 2006).

Plaintiff lives in Texas, the security system was installed in Texas, Defendant's Fort Worth, Texas office prepared and signed the contract, and Aviles accessed Plaintiff's security system from Texas.  The only contact this case has to the State of Florida is that

ADT has its principal place of business in Florida (DE [47], ¶ 10). The parties do not dispute that Texas law governs this action.

III. DISCUSSION

    A. Breach of Contract

ADT moves to dismiss Plaintiff's breach of contract claim on the ground that the Amended Complaint fails to identify any provision of the contract that was breached and, therefore, the breach of contract claim is inadequately pled. Plaintiff responds that her Amended Complaint clearly alleges a breach of an implied covenant "to provide a security system that was suitable for its advertised purpose and to not contain design flaws that compromise user safety and security." (DE [47], ¶ 60). This alleged implied covenant forms the basis for Plaintiff's breach of contract claim. ADT argues that Texas law does not permit creation of this implied covenant.

"Implied covenants are not favored in Texas law and, therefore, courts imply covenants in written contracts only in rare circumstances." *Estate of Scott*, 2020 WL 2736466, at *3 (Tex. App. May 27, 2020). In those rare circumstances, "however, a court may imply a covenant in order to reflect the parties' real intentions." *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.,* 121 S.W.3d 742, 747-48 (Tex. 2003). For example, "when it is clear that performance expressly promised by one party is such that it cannot be accomplished until a second party has first performed, the law will deem the second party to have impliedly promised to perform the necessary action*.*" *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 851 (Tex. 2009). In such cases, "courts may imply a return promise so the dealings of the parties can be construed to mean something rather than nothing at all." *Id.* at 850.

In this case, Plaintiff alleges that she entered into a contract with ADT for security monitoring services. She contends, in essence, that the contract necessarily implies an agreement that the security monitoring services would be secure from intrusion by ADT's employees. The Court agrees. A contract for a security monitoring service that is itself unsecure is a contract for "nothing at all." *Id.*

ADT argues that the contract expressly disclaims the existence of any implied covenants:

> **24. ENTIRE AGREEMENT**. THIS CONTRACT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES. I AM NOT RELYING ON ADT'S ADVICE OR ADVERTISEMENTS. ADT IS NOT BOUND BY ANY REPRESENTATION, PROMISE, CONDITION, INDUCEMENT OR WARRANTY, EXPRESS OR IMPLIED, THAT IS NOT INCLUDED IN WRITING IN THIS CONTRACT. . . .

(DE [55] ¶ 24). This provision cannot be a bar to an implied covenant to supply a security system reasonably secure from unauthorized access. The Pulse application is included with the standard monthly services under Services to Be Provided and the contract lists one bookshelf camera under Equipment To Be Installed (DE [55], Sections 2 and 3). Plaintiff alleges that the Pulse system had a vulnerability that gave third parties the ability "to access the security system and various connected security devices including door locks and cameras." At this stage in the proceedings, the Court cannot conclude that the parties' "real intentions" for the security monitoring system included a system that could be remotely accessed by unauthorized parties. For this reason, the Court will deny ADT's motion to dismiss the breach of contract claim.

B.  Federal Rule of Civil Procedure 9(b)

ADT moves to dismiss Plaintiff's claim under the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code Ann. § 17.45, for failure to meet the pleading requirements of Rule 9(b).  ADT contends that Plaintiff's allegations are conclusory and lack recitation of the precise statements or misrepresentations made.  The Court disagrees.

Rule 9(b) pleading requirements are designed to "alert[] defendants to the precise conduct with which they are charged, but are not so onerous as to 'abrogate the concept of notice pleading.'" *Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Durham v. Bus. Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)).

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*U.S. ex rel. Clausen v. Lab. Corp. of Am.,* 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba,* 256 F.3d at 1202.

Plaintiff has met her burden of pleading under Rule 9(b).  Plaintiff alleges facts describing the vulnerabilities in ADT's Pulse system, ADT's knowledge and expressed commitment to security issues, the date when Plaintiff purchased the home monitoring system, and her unwillingness to purchase the system if the vulnerabilities had been disclosed.  The First Amended Complaint provides ADT with adequate notice of the basis for Plaintiff's DTPA claim and, therefore, ADT's Motion to Dismiss the DTPA claim is denied.

C. <u>Negligence Claim</u>

ADT moves to dismiss Plaintiff's negligence claim because she has not alleged a physical injury as required by Texas law. "For many breaches of legal duties, even tortious ones, the law affords no right to recover for resulting mental anguish." *Temple-Inland Forest Products Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999) (fear of developing cancer after asbestos exposure not actionable without physical injury). "Absent physical injury, the common law has not allowed recovery for intentional infliction of emotional distress except in certain specific, limited instances." *Id.* ADT argues that because Plaintiff did not suffer physical injuries, her negligence claim cannot survive.

Plaintiff argues that the physical injury requirement is not as broad as Defendant contends. Whether a plaintiff can recover mental anguish damages without physical injury "depends on both the nature of the duty breached and the quality of proof offered by the plaintiff." *Id.* at 91. Indeed, the Texas supreme court has held that although "there is no general duty not to negligently inflict emotional distress," mental anguish can be compensated "in connection with defendant's breach of some other duty imposed by law." *Boyles v. Kerr*, 855 S.W.2d 593, 596 (Tex. 1993).[3] "Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, [Texas courts] permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997). "These

---

[3] "Generally, an award of mental anguish damages must be supported by direct evidence that the nature, duration, and severity of mental anguish was sufficient to cause, and caused, either a substantial disruption in the plaintiff's daily routine or a high degree of mental pain and distress." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 231 (Tex. 2011). This is a matter of proof for trial.

include suits for wrongful death, *see Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 551 (Tex.1985), and actions by bystanders for a close family member's serious injury, *see Freeman v. City of Pasadena,* 744 S.W.2d 923 (Tex.1988)." *Likes*, 962 S.W.2d at 496; *see also, Silcott v. Oglesby,* 721 S.W.2d 290, 292 (Tex.1986) (intentional tort of child abduction); *Leyendecker & Assocs, Inc. v. Wechter,* 683 S.W.2d 369, 374 (Tex.1984) (defamation); *Billings v. Atkinson,* 489 S.W.2d 858, 860–61 (Tex.1973) (invasion of privacy); *Stuart v. Western Union Tel. Co.,* 18 S.W. 351, 353 (1885) (failure of telegraph company to timely deliver death message); *Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904, 906–07 (Tex. Civ. App. 1969) (negligent handling of corpse). These cases involved both negligent and intentional torts. The Texas supreme court has stated that "the law of mental anguish damages is rooted in societal judgments, some no longer current, about the gravity of certain wrongs and their likely effects." *Likes*, 962 S.W.2d at 496.

Plaintiff argues that her negligence claim is not merely a claim for negligent infliction of emotional distress; instead, she alleges that ADT caused an invasion of privacy by failing to ensure that its cameras and set-up procedures were sufficiently robust to protect against unauthorized access and use. Specifically, she has alleged that "ADT had a duty to exercise reasonable care in ensuring that all ADT security systems were secure, safe to use, and inviolable by unauthorized parties." (DE [47], ¶ 69). The Texas supreme court has held that "an unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted." *Billings*, 489 S.W.2d at 860 (Tex. 1973). *Billings* involved an intentional act of wiretapping and the plaintiffs suffered no physical injury, but the court recognized that "[d]amages for mental suffering are

recoverable without the necessity of showing actual physical injury in a case of willful invasion of the right of privacy because the injury is essentially mental and subjective, not actual harm done to the plaintiff's body." *Id.* at 861.

The question of whether a cause of action exists for negligent invasion of privacy is not resolved in Texas. *Wheeler v. Yettie Kersting Mem. Hosp.*, 866 S.W.2d 32, 54 (Tex. App. 1993) (recognizing that the issue of negligent invasion of privacy was abandoned by the plaintiff in *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993)).[4] If Texas law were to recognize a duty by ADT to protect Plaintiff's privacy from being invaded through the very security system it installed, a claim for mental anguish damages arising from negligent breach of that duty could be brought. *See Boyles,* 855 S.W.2d at 596 ("Our decision [that there is no general claim for negligent infliction of emotional distress] does not affect a claimant's right to recover mental anguish damages caused by Defendant's breach of some other legal duty.").

Texas courts do recognize an individual right of privacy. *Billings*, 489 S.W.2d at 861 (invasion of privacy is a willful tort). A Texas appellate court recently discussed the right of citizens to be free of unauthorized observation in their homes:

> The State has an interest in protecting its citizens' personal privacy and security in the seclusion of their homes where they have a legitimate right to expect to be free from prying eyes and lenses. The United States Supreme Court has recognized that "[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Frisby [v. Schulte]*, 108 S. Ct. 2495, 2502 (1988) (quoting *Carey v. Brown*, 447 U.S. 455, 471, (1980)). Texas has long proscribed "peeping Tom" activity by

---

[4] The court in *Boyles* noted that the plaintiff's claim for negligent invasion of privacy had been abandoned before trial. 855 S.W.2d at 601, n.7. Only the claim for negligent infliction of emotional distress was tried to the jury, who returned a verdict for the plaintiff. The Texas supreme court held that no cause of action existed for negligent infliction of emotional distress but remanded the case to permit the plaintiff to proceed on a viable cause of action. *Id.* at 603.

10

> making it a crime to peer into a person's home or hotel room through a window or other opening. *See, e.g.*, Tex. Penal Code §§ 42.01(11) (disorderly conduct); 21.17 (voyeurism). The individual's interest in seclusion and the State's interest in protecting it are no less when the peeping Tom wields a camera or peers remotely by means of a camera or electronic transmission device hidden in the home. "[I]n the privacy of the home, the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder." *F.C.C. v. Pacifica Found.*, 438 U.S. 726 (1978).
>
> The right of privacy also includes rights to bodily integrity and sexual privacy. A person's fundamental interest in bodily integrity and sexual privacy have been recognized as liberty interests that are protected from unwarranted state interference by the Due Process Clause. *See Lawrence v. Texas*, 539 U.S. 558, 564-67; *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992). Those interests are invaded by a private actor who creates unconsented visual images of a person in a place such as a changing room or a bathroom where people are vulnerable, expose their bodies, and engage in highly private activities with the reasonable expectation they are not being photographed or recorded.

*Ex parte Metzger*, 2020 WL 5027397, at *11 (Tex. App. Aug. 26, 2020). Texas courts place a great value on citizens' privacy. In that ADT endeavored to provide Plaintiff with a security system to prevent intrusion, the Court concludes that ADT has a duty under Texas law to reasonably protect Plaintiff from invasions of privacy through unauthorized access of that system and that Plaintiff may recover damages for mental anguish caused by a breach of that duty, even in the absence of physical damages. Thus, Plaintiff's First Amended Complaint states a claim for negligent invasion of privacy.

Likewise, the First Amended Complaint also states a claim for negligent hiring and/or supervision of Aviles. Taking the allegations of the First Amended Complaint as true, Aviles committed several torts arising from his installation of the Pulse security system in Plaintiff's home that Plaintiff alleges could have been prevented had he been

better supervised. Plaintiff having alleged legally recognized torts and damages committed by Aviles while accessing ADT's equipment, the Court concludes that Plaintiff has stated a claim for negligent hiring/supervision. *See Wansey v. Hole,* 379 S.W.3d 246, 247 (Tex. 2012) (quoting *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App. 2005) ("To prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff.")).

Finally, Defendant moves to dismiss Plaintiff's claims for gross negligence, which forms the basis for her claim for exemplary damages. To recover exemplary damages, Plaintiff "must show both an elevated likelihood of harm *and* that the magnitude of the harm was very substantial." *Kovaly v. Wal-Mart Stores Texas, LLC,* 157 F. Supp. 3d 666, 671 (S.D. Tex. 2016). This is a matter of proof and it is, therefore, premature to make the determination on exemplary damages at this stage.

### D. Intentional Tort Claims

ADT moves to dismiss the two intentional tort claims alleged by Plaintiff – intentional infliction of emotional distress and intrusion upon seclusion – on the ground that she has not pled any facts to support the conclusion that ADT acted intentionally and without any basis in law or fact to hold ADT vicariously liable for the acts of its former employee.

*1. Intentional infliction of emotional distress*

ADT argues that Plaintiff's claim for intentional infliction of emotional distress must be dismissed because (1) ADT's alleged conduct cannot support the claim and (2) the

claim is insufficiently pled. "To recover damages for intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999) (quoting *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex.1998)). "In determining whether certain conduct is extreme and outrageous, courts consider the context and the relationship between the parties." *Id.* at 612. An action that is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 216.

ADT argues that allegedly "allowing technicians to create authorized user accounts" or failing to discover such conduct occurred is not the type of outrageous conduct required to sufficiently allege a claim for intentional infliction of emotional distress. Plaintiff argues that the subjectivity of the legal standard for outrageousness has led Texas and federal courts to find a wide variety of conduct outrageous and that dismissal at the pleading stage is premature. The Court agrees that dismissal of this claim is premature. The nature of the conduct must be analyzed in context of the facts surrounding the parties' relationship. Plaintiff alleges that ADT knew of customers' concerns with privacy and hacking, advertised its home security system as safe, and yet created a situation where nonauthorized users could grant themselves access to

13

customers' systems. Much more needs to be known to permit the Court to evaluate the outrageousness of ADT's conduct. The Motion to Dismiss the intentional infliction of emotional distress claim will be denied.

　　2. *Intrusion Upon Seclusion*

ADT moves to dismiss Plaintiff's Intrusion Upon Seclusion claim on the ground that she cannot plausibly allege that ADT intentionally intruded, physically or otherwise, upon her solitude, seclusion or private affairs or concerns which would be highly offensive to a reasonable person. *Valenzuela v. Aquino,* 853 S.W.2d 512, 513 (Tex. 1993). Although the intrusion alleged by Plaintiff clearly meets the "highly offensive" standard, the Court agrees with ADT and holds that Plaintiff has not and cannot allege facts to sustain a claim for intrusion upon seclusion by ADT. The voyeurism suffered by Plaintiff was not committed by ADT, but rather by ADT's employee. Plaintiff alleges that ADT knowingly installed an unsecure security system in Plaintiff's home, which "left the door open" for its employee to spy on Plaintiff and her family and that installation amounts to an intrusion upon seclusion. While those facts may be true, they do not support the conclusion that ADT committed the intrusion. Plaintiff's reliance on *Crosstex N. Texas Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 605 (Tex. 2016) is not applicable. *Crosstex* involved a nuisance claim, and the court addressed the intent required to hold a defendant liable for a nuisance: "the evidence must establish that the defendant intentionally caused the interference that constitutes the nuisance." *Id.* This line of reasoning has no bearing on the tort of intrusion upon seclusion, which requires an actual intrusion, physical or otherwise. *Valenzuela*, 853 S.W.2d at 513. Again, ADT did not commit an intrusion on

Plaintiff's privacy. Accordingly, Defendant's motion to dismiss the Intrusion Upon Seclusion claim will be granted.

3. *Respondeat Superior*

ADT moves to dismiss Plaintiff's intentional tort claims to the extent they are founded upon the doctrine of *respondeat superior.* ADT argues that Texas law does not allow vicarious liability to attach under the facts alleged in Plaintiff's First Amended Complaint. The Court agrees.

"Under Texas law, 'a principal is vicariously liable for the torts of [his agents] committed in the course and scope of their employment.'" *Ross v. Marshall*, 426 F.3d 745, 763–64 (5th Cir. 2005) (quoting *GTE S.W.*, 998 S.W.2d at 617). An employee can only be found to be acting within the course and scope of his employment if his actions are "(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed." *Id.* (citations omitted). "An employee's intentional, tortious conduct falls within the scope of employment when the conduct, even if contrary to express orders, is of the same general nature as that authorized or incidental to the conduct authorized." *Zarzana v. Ashley*, 218 S.W.3d 152, 159 (Tex. App. 2007). "If the intentional tort is committed in the accomplishment of a duty entrusted to the employee . . . the employer may be liable." *GTE S.W.,* 998 S.W.2d at 617-18 (inappropriate actions toward subordinate employees within the scope of position as supervisor). The "scope of authority may be a question of law in the absence of disputed questions of fact." *Ross,* 426 F.3d at 764.

The First Amended Complaint alleges injuries caused by voyeurism committed by ADT's employee. Although Plaintiff can and has alleged that ADT was negligent in

enabling Aviles to have access to her security system, Plaintiff alleges no facts to establish that Aviles' unauthorized access of her security system was in furtherance of ADT's business or committed in the accomplishment of a duty entrusted to an employee. Unlike an overly aggressive bouncer who injures a bar patron, *Durand v. Moore,* 879 S.W.2d 196 (Tex. App. 1994), or a supervisor whose management style created a hostile work environment, *GTE S.W.,* 998 S.W.2d at 617-18, Aviles' unauthorized access of Plaintiff's security system was unrelated to his job duties and conducted in furtherance of his own interests. Texas law does not attach liability to the employer under these circumstances. *See Buck v. Blum*, 130 S.W.3d 285 (Tex. App. 2004) (hospital not vicariously liable for sexual assault committed by doctor in course of physical examination of patient). For this reason, Plaintiff may not seek to hold ADT vicariously liable for any intentional torts that may have been committed by Aviles.

E. Computer Fraud and Abuse Act, 18 U.S.C. § 1030

The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "Act"), prohibits unauthorized access of computer systems and grants a cause of action for damages against a violator of the Act. 18 U.S.C. § 1030(g).[5] Several "courts have held that an employer can be vicariously liable for an employee's violations of the CFAA if those transgressions occur in the scope of employment or the employer directs the employee's

---

[5] The civil damages section states: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses[4] (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware." 18 U.S.C.A. § 1030(g) (West).

16

conduct." *NetApp, Inc. v. Nimble Storage, Inc.,* 41 F. Supp. 3d 816, 835 (N.D. Cal. 2014) (citing *SBM Site Servs., LLC v. Garrett,* 2012 WL 628619, at *6 (D. Colo. Feb. 27, 2012) ("It is reasonable to infer that Garrett accessed SBM's laptop during the time that he was employed with Able and in the scope of such employment."); *Charles Schwab & Co. v. Carter,* 2005 WL 2369815, at *6 (N.D.Ill.2005) ("the Court assumes that Congress drafted the CFAA with an intent to permit vicarious liability")). ADT disputes that vicarious liability is available under the Act and cites cases to support its position. *Doe v.Dartmouth-Hitchcock Med. Ctr.*, 2001 WL 873063, at *5 (D.N.H. July 19, 2001) (finding that a theory of vicarious liability is not "permitted by the language of the CFAA itself, nor would it further the basic purpose of the Act"); *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 589–90 (E.D. Pa. 2016) (concluding that "even assuming that Congress intended to allow vicarious liability for CFAA claims," such a claim could not withstand dismissal where the complaint did not plead any facts on which such liability could be based).

The Court need not make that determination. Even assuming the Act permits vicarious liability, Aviles' unauthorized access of Plaintiff's security system was not in the course and scope of his employment, as discussed at length above. Accordingly, Count V of the First Amended Complaint will be dismissed.

F. <u>Privacy Monitoring</u>

Count VIII of Plaintiff's First Amended Complaint seeks "injunctive relief, requiring ADT to create a fund sufficient to cover the costs of commercial and/or legal services needed to remedy the invasion of privacy that they have suffered, including (1) monitoring for the distribution of images or video from their homes, (2) taking down any such media that is posted, and (3) providing any such further relief as the Court deems equitable and

just." (DE [47], ¶ 123). ADT moves to dismiss this count on the ground it is not a viable cause of action. ADT argues that injunctive relief is a remedy, not a separate cause of action. *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) (quotation omitted); *Espinoza v. Countrywide Home Loans Servicing, L.P.*, 2014 WL 3845795, at *7 (S.D. Fla. Aug. 5, 2014), *aff'd sub nom. Espinoza v. CountrywideHome Loans Servicing, LP*, 708 Fed. Appx. 625 (11th Cir. 2017).

The Court agrees with ADT that privacy monitoring is not a separate cause of action; the Court also agrees with Plaintiff that injunctive relief may be an available equitable remedy in the event ADT is held liable on the claims raised by Plaintiff. Accordingly, the Court will deny as moot Defendant's Motion to Dismiss Count VIII.

G. Class Action Allegations

ADT moves to dismiss or strike Plaintiff's class action allegations because she has failed to plead a plausible class definition. The Court will determine the plausibility and suitability of the proposed class after class certification issues have been briefed.

IV. CONCLUSION

For the reasons set forth above, the Court concludes that, with limited exceptions, Plaintiff's First Amended Complaint states a cause of action under Texas law. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss First Amended Complaint (DE [58]) be and the same is **GRANTED IN PART AND DENIED IN PART.** Count IV (Computer Fraud and Abuse Act) and Count IX (Intrusion Upon Seclusion) are **DISMISSED WITH PREJUDICE**.  The Motion to Dismiss is otherwise **DENIED.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 30th day of December 2020.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF