**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | |
|---|---|
| SHANA DOTY, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>     v.<br><br>ADT, LLC d/b/a ADT SECURITY SERVICES, a Delaware limited liability company,<br><br>                    Defendant. | Case No. 0:20-cv-60972-AHS |

**DEFENDANT ADT LLC'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL**

**Introduction**

Plaintiff brings this class action against Defendant ADT LLC ("ADT") following ADT's self-reporting of isolated criminal conduct by a now-former ADT technician in Texas. That individual, Telesforo Aviles, is being prosecuted criminally for the same conduct at issue in this lawsuit, for which Plaintiff seeks to hold both Aviles and ADT liable.

Almost one year after filing the lawsuit, Plaintiff now complains about the content of ADT's privilege log.[1] Putting aside the procedural improprieties that plague Plaintiff's Motion, Plaintiff's generalized arguments should be rejected by this Court. Plaintiff's Motion makes clear that Plaintiff has engaged in only a surficial review of ADT's privilege log, simply for the purpose of pointing out purported deficiencies, rather than for substantive comprehension. Had Plaintiff taken the time to understand ADT's log, and appropriately confer with ADT's counsel about any concerns, the fallacy underlying Plaintiff's arguments would be clear and Plaintiff's Motion would have been mooted. As such, and for the reasons set forth herein, Plaintiff's Motion should be denied.

**I.   Plaintiff's Motion is Procedurally Improper**

As a preliminary matter, Plaintiff's Motion exceeds the page limit set forth in this Court's Discovery Procedures by almost two full pages of argument. Similarly, Plaintiff's Motion is untimely in violation of Local Rule 26.1(g). ADT's privilege log was served on February 10, 2021.[2] Yet, Plaintiff waited until March 19, 2021 to raise any concerns therewith (including its complaint that the privilege log was due earlier, which would only make Plaintiff's challenge more untimely). And despite receiving ADT's response to its March 19th letter on March 26, Plaintiff again waited until May 4, 2021 to serve the instant Motion.

---

[1] Not coincidentally, Plaintiff's deadline to file for class certification is June 11, 2021.
[2] ADT notes that the privilege log submitted to the Court contains a revised date of April 28, 2021. The April 28, 2021 revision added two documents that were inadvertently excluded. That revision alone is not the subject of Plaintiff's Motion.

In addition, Plaintiff has not fulfilled her meet-and-confer obligations under Local Rule 7.1. While Plaintiff attaches two letters she sent to ADT, Plaintiff never conferred further with ADT following receipt of ADT's responses to advise that concerns remained, nor did Plaintiff ever attempt an actual conversation with ADT's counsel about any purported deficiencies. Instead, it appears Plaintiff's letter-writing was simply an attempt to paper the file for this eventual motion regardless of ADT's responses, which responses appear to have been ignored by Plaintiff's counsel.

Moreover, Plaintiff's correspondence focused solely on the content of ADT's privilege log, not the merits of ADT's privilege claims, which Plaintiff's Motion now addresses (albeit in generalized fashion). To the extent that Plaintiff's Motion seeks to compel the production of documents identified on ADT's privilege log (as opposed to an amended privilege log), Plaintiff has wholly failed to confer with ADT regarding the substance of the privilege claims.

Finally, Plaintiff's Motion, which categorically argues for wholesale production of all documents logged regardless of the nature of the claimed privilege, is improper. Plaintiff's Motion fails to engage in any analysis regarding specific entries on ADT's log to identify which documents, if any, would be subject to production should the Court grant any portion of Plaintiff's Motion. Without identification and argument about specific documents, ADT is prejudiced in its ability to respond to Plaintiff's Motion and this Court is asked to do Plaintiff's work for her in identifying the documents that may be affected by a ruling on any given argument.

For all these reasons, Plaintiff's Motion should be denied outright. Should the Court consider the substance of Plaintiff's Motion, the outcome is the same.

## II. ADT's Privilege Log Appropriately Establishes Attorney-Client Privilege

Plaintiff argues that ADT waived its attorney-client privilege in four ways – by failing to timely produce a privilege log; by failing to identify the individuals listed on its log; by using

vague descriptions on its log; and by failing to substantiate its claims of allied litigant and common interest privilege. Each argument fails, as explained below.

### A. ADT's Privilege Log Was Not Untimely

Although Plaintiff's Motion argues that a privilege log was due within 14 days of production, the Confidentiality and Protective Order agreed to by the parties and entered by this Court [ECF No. 71] provides that a privilege log must be served within 30 days of the production from which documents are being withheld, as already explained by ADT [Mot. Ex. 3-D, ECF No. 103-3].[3] Here, the privileged information was withheld from ADT's final production wave, produced on February 10, 2021 and a privilege log was provided that same day. Indeed, it was ADT's amended responses, served on February 10, 2021, which first set out the allied litigant/common interest privilege objection about which Plaintiff's Motion, in part, complains.[4] That being the case and for the reasons further explained in ADT's letter response [Mot. Ex. 3-D], ADT's privilege log was timely served. Moreover, it is undisputed that Plaintiff has now had ADT's privilege log for **three months**, which alone moots any argument Plaintiff has regarding the timing of its service.

### B. ADT's Privilege Log is Sufficient – Individuals Are or Will Be Appropriately Identified

First, Plaintiff contends ADT failed to appropriately identify the individuals listed on its privilege log. The obligation to provide titles for individuals listed on a privilege log exists only when the relationship is not otherwise apparent. S.D. Fla. L. R.. 26.1(e)(2)(B)(ii)(a). Here,

---

[3] Plaintiff's continued misrepresentation in this regard simply highlights the lack of any meaningful conferral on the discovery issues raised in Plaintiff's Motion.

[4] As ADT explained, it was not Plaintiff's February 5, 2021 letter that prompted service of a privilege log. Rather, ADT was already planning on serving its final production wave and privilege log, in satisfaction of its discovery obligations as evidenced by the reference to the upcoming production and privilege log in the parties' Joint Scheduling Report, submitted to the Court on February 4, 2021 [ECF No. 88,], at Section L.

4

Plaintiff's Motion complains that there are over 500 individuals for whom ADT has not identified a title. Mot. p.7. However, Plaintiff's own motion acknowledges that this number does not account for name variations and therefore demonstrates that Plaintiff's counsel has not done any type of substantive review to determine whether any information is actually needed from ADT. Mot. fn.2. In fact, it appears Plaintiff's estimate includes ADT's counsel of record in this litigation (and variations of their email addresses), whose relationship with ADT is obviously well-known to Plaintiff's counsel.[5] Plaintiff's Motion has not identified a single individual whose relationship is unknown to Plaintiff.  As such, Plaintiff has not demonstrated that ADT's claims of privilege are insufficient such that they should be overruled.

Nonetheless, upon review, the chart ADT previously provided identifying titles for individuals listed on its privilege log was inadvertently incomplete.  Despite the shortcomings of Plaintiff's Motion and the lack of any conferral by Plaintiff's counsel about this, contemporaneously with this Opposition, ADT will serve a supplemental chart to account for additional unidentified individuals whose affiliation may not be readily known to Plaintiff.[6]

### C. ADT's Privilege Log is Sufficient - Descriptions Are Adequate

Second, Plaintiff contends that ADT's descriptions are vague, preventing Plaintiff from assessing the validity of ADT's privilege claims. Again, Plaintiff makes this argument in generalities, without engaging in any kind of analysis with regard to the documents claimed within each document description. Instead of focusing on specifics, Plaintiff contends that ADT's

---

[5] Counsel of record are listed by name and/or by association, with "SHB" appearing on the log following individual names. *See e.g.*, PRIV_DOTY0184; PRIV_DOTY0427; PRIV_DOTY0452; PRIV_DOTY3283.

[6] Contrary to Plaintiff's count of "more than 500 individuals" who remain to be identified, ADT identified less than half that number, including counsel of record.

"vague" descriptions are proof that "ADT is simply casting the net of 'privilege' over everything it did after it discovered the security defect in the Pulse system." [Mot. p. 7].

Upon review, ADT's log reflects 1,422 differing descriptions for the 3,686 documents listed. While there is some consistency among the descriptions across documents with the same privilege claims, the descriptions are appropriately tailored to the content of the document described, without revealing privileged information. *See e.g. In re Denture Cream Prod. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5057844, at *10 (S.D. Fla. Oct. 18, 2012) (explaining that "requiring a fully detailed description of the withheld document would, in essence, eviscerate the purpose of the privilege rule."). Thus, this is not a situation where generic descriptions were applied in a boilerplate fashion. *See id.* (finding pre-supplemental description sufficient where description read "[c]orrespondence from P & G employee to P & G employee regarding searches for Fixodent information and data and compiling same at the request of counsel for purposes of litigation").

### D. Plaintiff Has Not Demonstrated Waiver As To "Allied Litigant" and "Common Interest" Documents

Finally, Plaintiff contends that ADT asserted the "allied litigant and common interest doctrine on most of the withheld documents" and challenges those claims. Yet again, the generalities in which Plaintiff's Motion speaks belie the truth. In fact, ADT has only asserted the allied litigant or common interest doctrine on 213 of the 3,686 documents identified on its log as attorney-client privileged, or less than **6%** of the attorney-client privileged documents. Whether or not these privileges appropriately apply serves as no basis for this Court to compel production of all attorney-client communications on ADT's log, as Plaintiff's Motion requests.

As ADT's privilege log reflects, all instances in which the common interest and allied litigant privilege are claimed constitute the sharing of otherwise privileged information with law enforcement for purposes of assisting law enforcement's investigation into Aviles. Thus, even if

6

the documents do not squarely fall within the allied litigant or common interest privilege, the appropriate analysis is whether such a disclosure constitutes a waiver of privilege. Each of 213 attorney-client privileged documents that Plaintiff challenges on this ground are also identified as work product on ADT's log. Plaintiff's Motion does not challenge the work production protection claimed on these documents on the basis of disclosure to third parties.

> Unlike attorney client communications, work product protection is not automatically waived by disclosure to a third party who does not share a common legal interest. Instead, disclosure of work product results in waiver of work-product protection only if work-product is disclosed to adversaries or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material.

*See Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 136 (E.D. Tex. 2003) (citations omitted). Moreover, "[u]nlike the attorney-client privilege, the burden of proving waiver of work-production protection falls on the party asserting the waiver." *Id.* Here, Plaintiff has not undertaken to establish waiver of work product and therefore, the relief requested by Plaintiff (the production of the documents) cannot be granted.

### III.  ADT Has Adequately Established Its Claims of Work Product

Plaintiff attempts to overcome ADT's work product claims by arguing that 1) ADT's investigation into Aviles' conduct was done in the ordinary course or business and 2) that fact work product generated as a result of the investigation is not protected. As with its arguments about attorney-client privilege, both arguments miss the mark.

#### A.  ADT Appropriately Distinguished Between An Investigation Conducted in the Ordinary Course of Business and the Investigation Led by Legal Counsel Here

Plaintiff first argues that ADT necessarily would have conducted an investigation into Mr. Aviles' conduct, regardless of the risk of litigation, and therefore work product protection does not exist and all of ADT's investigation must be deemed discoverable. [Mot. p. 9-10] Again, Plaintiff argues in generalities without reference to any specific documents on ADT's privilege log.

7

Plaintiff's Motion as framed must be denied. Indeed, the Southern District of Texas has explained that "such a sweeping argument is fatally flawed from its inception, as it presupposes that a business investigation and a legal investigation are mutually exclusive." *See Fisher v. Haliburton*, Case No. CV H-05-1731, 2009 WL 10694752, at *5 (S.D. Tex. June 9, 2009). As the *Haliburton* court further explained, "a business investigation may multi-task when its goal and the goal of the legal department to prepare for litigation run in tandem." *Id.* Thus, Plaintiff's broadbrush argument must be rejected outright.

Moreover, a review of ADT's privilege log shows ADT's privilege claims carefully acknowledge the distinction between a routine business operation and an investigation for purposes of litigation. As set forth in ADT's interrogatory answers, ADT was first alerted to Aviles' conduct on March 25, 2020, during a telephone conversation between a now-former ADT customer and ADT customer service representative LaToya Dassie. *See* ADT Answer to Interrog. No. 7. At that time, ADT conducted an investigation in the ordinary course of business. <u>Responsive documents related to the investigation at that point in time were collected and produced.</u> *See* ADT-343677-10912-13, 11546-48, 11559-62, 11566-68, 11575-578. 11585-87, 11594-96, 11602-04.

It was during the course of that investigation that ADT recognized the need to secure legal advice as to the continued course of the investigation and potential litigation. ADT's log appropriately identifies that evolution with privilege claims starting on March 30, 2020, which reflect that ADT's in-house counsel became involved in the investigation, and shows that outside counsel (counsel of record in this lawsuit) was retained by April 3, 2020, with litigation pending as early as April 5, 2020.[7] *See e.g., Zenith Ins. Co. v. Texas Spine Institute for Surgery, L.L.P.*,

---

[7] These facts are clear from the face of ADT's privilege log. Moreover, to the extent that Plaintiff identifies specific documents which it believes do not qualify as work product, rather than categorically arguing that there is no work product protection, ADT will respond with appropriate declarations supporting its work product claim as may be necessary.

328 F.R.D. 153, 162 (N.D. Tex. 2018) (recognizing that a document is work product if "the primary motivating purpose behind the creation of the document was to aid in possible future litigation" and recognizing that factors relevant to that determination are "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance").

Thus, this is not a situation where a defendant seeks to cloak with privilege an investigation into a routine event conducted during the ordinary course of business. Here, Aviles' criminal conduct was an isolated course of conduct which, upon discovery, gave rise to a clear litigation risk and led to retention of outside counsel and actual litigation very soon thereafter. The occurrence was not routine, nor was the resulting investigation. Rather, when ADT's routine investigation revealed that a now-former ADT technician had engaged in criminal conduct such that ADT anticipated litigation, ADT rightly sought legal counsel to guide its investigation and advise on legal implications. *See Heckman v. TransCanada USA Servs. Inc.*, Case No. 3:18-cv-00375, 2020 WL 211037, *2 (S.D. Tex. Jan. 13, 2020) (where company departed from ordinary business operations and instead had counsel direct investigation due to litigation risk, investigative materials were protected work product). ADT appropriately claims privilege as to the documents which reflect counsel's mental impressions, legal advice, and information which was gathered at the direction of counsel for purposes of facilitating legal strategy. *See e.g., Castillo v. Hexion Specialty Chemicals, Inc.*, Civ No. SA-08-CA-258, 2009 WL 10669322 at *2-3 (W.D. Tex. May 26, 2009) (finding investigation materials prepared by production superintendent were protected work product). Plaintiff's generalized assertions that no work product protection can exist because ADT would have necessarily conducted an investigation into Mr. Aviles' conduct fail as a matter of both law and fact.

### B. Plaintiff Has Not Made A Sufficient Showing To Entitle Her to Fact Work Product

Finally, Plaintiff seeks to compel the production of fact work product, contending that the results of ADT's work product investigation are "central to the case", that "Plaintiff cannot reconstruct ADT's investigation on the same issue using the normal discovery process", and that, even if she could, it would be an "undue hardship in doing it all over again." [Mot. at p. 12]  As with her other arguments, Plaintiff fails to identify the documents on ADT's log that she contends are fact work product.  And, other than simply saying it, Plaintiff fails to explain how any of her assertions are true. On this basis alone, Plaintiff's Motion should be denied.  *See Castillo*, 2009 WL 10669322 at *4 (finding conclusory assertions insufficient to demonstrate substantial need).

Even if this Court were to entertain Plaintiff's argument, it should easily find Plaintiff fails to meet her burden.  The issues in this case are hardly as complex as Plaintiff's counsel presents and Plaintiff has been afforded discovery into the facts necessary to prove (or not) her claims. First, there is no dispute with regard to the number of potentially affected customers or the scope of conduct at issue. *See e.g.,* ADT Privacy Notice, *available at* https://www.adt.com/adt-privacy-notice, last accessed May 11, 2021.[8]  Second, this case does not involve a complex technical cyber-breach, but rather the addition of Aviles' personal email address to customer accounts during service appointments. *See id.*  Moreover, Plaintiff knows that Mr. Aviles' was an isolated course of conduct.  *See id.*; *see also* Mot. Ex. 3-B (citing ADT Ans. to Interrog. No. 2; ADT Am. Resp. to RFP Nos. 40, 41, 44, 45)].

Plaintiff has received discovery regarding ADT's first notice of Aviles' conduct, as discussed above.  And ADT has produced documents which demonstrate the frequency and nature

---

[8] "ADT has learned that a Dallas, Texas-area ADT service employee abused his system access during service appointments by adding his personal email to 220 ADT customer accounts."

of access in which Aviles engaged, with respect to each class member that Plaintiff's counsel represents. *See* ADT Resp. to RFP No. 4-5, [ADT-343677-000093-104; 10818-28]. Moreover, ADT has produced relevant policies and procedures regarding installation and cybersecurity. *See* ADT Resp. to RFP Nos. 10-20, 25 [ADT-343677-0000108-9459; 10248-10816]. And ADT has produced its entire personnel file for Aviles. *See* ADT Resp. to RFP Nos. 1, 2, 22 [ADT-34367-000001-92].

To date, Plaintiff has deposed two of Aviles' former managers, and ADT is subpoenaing Aviles himself for deposition.[9] To the extent she needs additional information, Plaintiff will be free to question Aviles as to the mechanisms by which he gained access to customer accounts.

As the foregoing demonstrates, there is ample opportunity for Plaintiff to learn in discovery whatever facts she deems critical to this case, without access to ADT's work product protected investigative materials. *See e.g., Siegmund v. Xuelian Bian*, Case No. 16-cv-62506, 2018 WL 3725775, at *10 (S.D. Fla. Aug. 1, 2018) (document does not lose work product protection simply because it contains facts and recognizing other discovery mechanisms available to discover underlying facts). That being the case, even if she had tried, Plaintiff simply cannot meet her burden in establishing a substantial need for ADT's work product and an inability to obtain the same without undue hardship.

## **Conclusion**

For the foregoing reasons, Plaintiff's Motion to Compel should be denied.

Dated May 11, 2021.  Respectfully submitted,

                                              *Jennifer A. McLoone*_____
                                              Alfred J. Saikali (Florida Bar No. 178195)
                                              E-Mail: asaikali@shb.com
                                              Jennifer A. McLoone (Florida Bar No. 029234)
                                              E-Mail: jmcloone@shb.com

---

[9] Though named as a defendant, Plaintiff has not served Mr. Aviles and he must be subpoenaed.

SHOOK, HARDY & BACON L.L.P.
201 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
T: (305) 358-5171

-and-

Charles C. Eblen (*admitted pro hac vice*)
E-Mail: ceblen@shb.com
Jason R. Scott (*admitted pro hac vice*)
E-Mail: jscott@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
T: (816) 474-6550

***Counsel for ADT LLC***